The CAFRITZ COMPANY, Appellant,

v.

EMPLOYERS COMMERCIAL UNION IN-
SURANCE COMPANY OF AMER-
ICA, Appellee.

No. 6598.

District of Columbia Court of Appeals.

Argued Nov. 27, 1972.

Decided Sept. 11, 1973.

James Edward Ablard, Washington, D.
C., with whom John J. Wilson, Washington,
D.C., was on the brief, for appellant.

Edward J. Gorman, Jr., Washington, D.
C., with whom Kenneth B. Skelly, Wash-
ington, D.C., was on the brief, for appellee.

Before KELLY, FICKLING and GAL-
LAGHER, Associate Judges.

KELLY, Associate Judge:

This appeal concerns the amount of re-
coverable damages under a boiler and ma-
chinery insurance policy issued by Employ-
ers Commercial Union Insurance Company
of America (Employers) to The Cafritz
Company (Cafritz) for accidental damage
to the motor of an air conditioning unit.
The trial court found for Cafritz on the is-
sue of coverage,[1] allowing recovery of cer-
tain sums listed on an itemized repair bill
but disallowing others. It is the disallow-
ance of two items of damage that has been
called into question on appeal.

1. This issue is not challenged on appeal.

Specifically, the court disallowed (1) the sum of $644 charged for a new terminal board and its installation,[2] and (2) the entire $1,650 labor charge of Boland Trane Service Agency, Inc. (Boland Trane), the company Cafritz hired to repair the unit. With respect to the first item the court found that no evidence had been adduced at trial to show that the terminal board had been directly damaged by the accident and thus there was nothing in the record to support the claim that its repair was necessitated by the accident.[3] Appellant nevertheless urges that it should be permitted recovery for this expense since replacement of the terminal board was required to return the machine to working order and became part of the actual cost of repair. This argument overlooks the fact that coverage for a loss under the policy must be established before one can claim damages for the loss. The policy here in question covers only those losses *directly* caused by an accident and in the absence of evidence that the terminal board was so damaged, the trial court properly disallowed this item of damages.[4]

As to the Boland Trane labor charge, the facts are that in January of 1970, while performing regular winter maintenance, an employee of Barrington and Company, Inc. (Barrington), maintenance contractors for the Cafritz air conditioning equipment, found damage to a semi-hermatic motor within an air conditioning unit atop Cafritz' building at 1825 K Street, N. W. Cafritz was notified and contracted with Boland Trane, refrigeration engineers, to do the repair work.[5] Boland Trane dismantled the unit and removed the damaged motor which was picked up by the Electric Apparatus and Repair Company of Philadelphia (Electric), a subcontractor, for overhaul and repair. Boland Trane reassembled the air conditioning unit when the motor was returned. It then submitted a bill to Cafritz which included Electric's charge for the motor overhaul, marked up 50%;[6] the cost of a gasket kit, a terminal board and a terminal board gasket; its labor charge for disassembling and reassembling the unit, and a D.C. sales tax. The particular charge now in question reads:[7]

> Refrigeration Engineer — pull 1650.00 motor, tightened and wound all motor windings, shortened series connections, renewed bearings, rings, and gaskets, balanced rotor processed to remove all carbon, varnished and baked, tested for runout and end play, reassembled unit, attempted to evacuate, found crack in terminal board, replaced terminal board.

Confusion over the bill arose because the above-quoted language describes together the work done on the unit by Boland Trane and by Electric. Nevertheless, the testimony of appellant's witnesses with respect to the bill is that the $1,650 charge is for labor in dismantling and reassembling the unit, including leak testing and evacuation (approximately 80 hours), and that the charge is a customary and reasonable one for the work done. All agreed that the other work described was either done

---

2. A terminal board is a plastic fiber board which sits outside the shell of the machine. Wires from inside the machine connect at the terminal board to wires leading to the machine from the power source and controls.

3. The accident in this case was the burning out of a part of the motor housed inside the air conditioning unit. Under the policy the insurer agrees "[t]o PAY for loss on the property of the Insured *directly* damaged by such Accident . . . ." [Emphasis supplied.]

4. Indeed, the evidence appears to be to the contrary. Apparently the terminal board was not cracked when removed but was found to be cracked when replaced.

5. Appellee insurance company was also notified.

6. The trial court allowed appellant this item, reducing the mark-up customary in the trade to 25%. This finding is not challenged on appeal. The court also allowed the cost of the gasket kit and a sales tax.

7. R. at 213.

or would have been done by Electric, for which there was a separate charge, with mark-up, on the bill. The language was Boland Trane's description for the customer's benefit of all work done on the unit; the dollar amount of $1,650 covered Boland Trane's labor cost alone. Even appellee's expert witness, who expressed his opinion on the basis of the testimony he heard in court, did not dispute the fact that some amount was due, saying only that: "I would think that half of this charge would have been plenty." [Tr. ar 163.]

Subsequent to trial the court made written findings of fact and conclusions of law in which it said:[8]

> As to the item of $1,650, it is sheer duplication. The work was never performed, and there was no testimony which satisfied the court, by a fair preponderance of the evidence, that the work done by the local company was any more than it was obliged to do under a service and maintenance contract. They did no more than attach a megger and pull the motor and then replace the motor. They have so confused their bill, and their testimony, that the court cannot say that it is satisfied by a fair preponderance of the evidence as to the reasonableness of any portion of this item of $1,650.

■ Upon Cafritz' motion to amend its findings and conclusions, or alternatively for a new trial, the court issued another memorandum in which it first took counsel to task, erroneously it appears, for making no reference at trial to a particular endorsement of the policy upon which it relied.[9] It then discussed the burden of proof on the issue of damages. The trial court is correct in its holdings that the ul-timate burden of proof or of persuasion rests with the insured when the necessity for or the reasonableness of the claimed loss is seriously put into question by the insurer.[10] The court said, however:[11]

> [The] defendant has questioned the reasonableness of the charges made. The defendant has carried its burden of proof and stands unrebutted. . . .

■ This statement is but one of several which demonstrates that the trial court erred in disallowing the whole of the Boland Trane labor charge. The conclusion that Cafritz did not preponderate on at least some portion of this item of damages is based on clear misconceptions of the evidence. With respect to the court's first memorandum opinion, under no view of the testimony can it rightly be said that the $1,650 charge was sheer duplication. Moreover, Barrington was at that time the service and maintenance contractor, not Boland Trane, and the maintenance contractor was not permitted to pull or replace the motor. The statement that there was insufficient testimony that "the work done by the local company was any more than it was obliged to do under a service and maintenance contract" is therefore erroneous. Despite the confusing nature of the bill, Cafritz was entitled to recover some portion of the $1,650 paid Boland Trane under any construction of the evidence. The paid bill was introduced. The testimony was that the bill covered the repairs necessitated by the accident. Appellee Employers raised the question of reasonableness through cross-examination of appellant's witnesses and through the testimony of its own expert, but in no sense can it be said that Employers "carried its burden of proof and stands unrebutted." While we do not accept appellant's argument that the

---

8. R. at 218.

9. The endorsement was read into the record by counsel when questioning appellee's expert witness.

10. *See* Group Hospitalization, Inc. v. Foley, D.C.App., 255 A.2d 499, 501, and cases cited at n. 7 (1969). *See* and *cf.* Aetna Cas. & Sur. Co. v. Bell, 390 F.2d 612 (1st Cir. 1968).

11. R. at 231.

Repair or Replacement Endorsement to the policy[12] shifts the ultimate burden of persuasion to the insurer, it being at most sufficient to establish, prima facie, the extent of the loss, we are of the opinion that insofar as it relates to the Boland Trane labor charge the judgment of the trial court is plainly wrong and requires reversal.[13] A new trial shall be limited to that item of damages alone.

So ordered.

12. " . . . the Company agrees that loss on property of the Insured . . . shall mean the amount actually expended by the Insured to repair or replace such property . . . subject to the following provisions: "

13. D.C.Code 1972 Supp., § 17–305(a) ; Ford Motor Co. v. Keating, D.C.App., 262 A.2d 600 (1970).